Case will be submitted. Case numbers 1263-35 and 1263-36. James Rogers et al. v. Sheriff Nelsono O'Donnell et al. For all items, you will have to leave 15 minutes to provide. Mr. Horn for the appointment. Good morning. Your Honor, I've reserved five minutes for rebuttal. All right. It may please the Court, I am Andrew Horn. I represent the appellants, Gary Murphy and Brian Hensley, who are before this Court asking for redress of a summary judgment granted by the Honorable Jennifer Kaufman from the Eastern District of Kentucky. The appellants filed a 1983 action arising out of their indictment and ultimate six-day trial and termination from their employment arising out of essentially coerced and intimidated testimony from the only victim and principal witness for the prosecution. Judge Kaufman dismissed appellant's claims, which arise out of two what we know of principal occasions. November 12, 2009, a meeting between the appellee, Jennifer Smith, and Ms. McQueen, who was the principal witness, and her attorney, Mary Sharp. There was also a second event, December 21, 2009. Again, it was a meeting between Ms. McQueen, her attorney was not present, and Jennifer Smith, the appellee Jennifer Smith, and her husband, David Smith. Your Honor, I'm referring to by the first names only because we have two Smiths there I don't want to be over-familiar. Mr. Horn, let me go back to the way you introduced the issue. The issue, as you just described it, was the claim against these prosecutors by the police officers is coerced testimony. Is that what you said? It is the coercion of the witness, Your Honor, in the testimony. Just definitionally, if a prosecutor is meeting with a witness in connection with their upcoming grand jury testimony, why is that not almost by definition then within the scope of absolute immunity, even if the prosecutor is suggesting that the witness testified falsely? As long as it's in connection with preparing testimony. Well, first off, Your Honor, as a point of clarification, the prosecutor never claimed she testified falsely. The witness called the state police and later on at the trial recanted and advised the pettit jury that she only testified as she did at the grand jury because of coercion and intimidation by the prosecutor. I'm accepting your characterization. Well, Judge, if I may, there's two elements. Judge Kaufman, we'll use the November 12th occasion, Judge Kaufman indicated that the defendants had not proven that in fact they were outside the investigative process when that initial November 12th meeting occurred. The prosecutor was still conducting the investigation and is subject to the same immunity standards that any investigator would be, including a police officer. That's consistent with Supreme Court precedent that we analyze the immunities from a functional perspective, not because, quote, unquote, I'm a prosecutor or whatever I am. But how can that be true if the decision had already been made to present the case to the grand jury before either of the two interviews that are the subject of today's hearing? Actually, Your Honor, there are two criteria for that. In Buckley v. Simmons, which we cited in our briefs, and it's a fairly lengthy discussion concerning at what point the immunity attaches, Justice Scalia, in his concurring opinion, stated pretty succinctly, is one of the reasons you cannot be an advocate. You're still investigating unless there's not probable cause to arrest. We have the only victim, the only witness to this, and what they ultimately indicted, Your Honor, was intimidating witness, tampering witness. Well, then two of them are actually for complicity in intimidating, tampering, and for assault. Now, there are two. Well, Judge, if you listen to the interview on November 12th, it seems pretty clear that Smith wasn't revisiting the question of whether the sexual conduct was or wasn't consensual. That's something upon which she had gone clearly vacillated. She accepted that it was consensual. The focus of that interview on the 12th was on exactly what they ended up being charged with, a decision that had already been made to charge them. Judge, again, the only proof that a decision had been made to charge is the appellant's. The information that Ms. McQueen, who was the witness and the victim, indicated was that the context she said was, look, you need to get a hold of me because I may go forward with this indictment if I don't talk to you. Now, the information she received from the Sheriff's Department, or excuse me, that the plaintiffs had received from the Sheriff's Department, there was going to be no indictment. When Mary Sharp and Ms. McQueen left that meeting... Sheriff's don't indict prosecutors. Well, Your Honor, but again, it was part of the investigatory team, and we allege this as a conspiracy. I don't want to keep taking up our time. I don't see you even disputing in the briefs that the decision to present the case to the grand jury had been made before November 12th. You do dispute that? We do dispute that, Judge, and Judge Kaufman found that they had not proven that because of the information, again, they had not proved it to the summary judgment standard, because the information provided to Ms. McQueen when she was to come was that she needed to be interviewed because they may go forward with an indictment if they don't talk to her. At that meeting when Ms. Sharp, Ms. McQueen's attorney, and Ms. McQueen left, they left the impression that there was not going to be an indictment. When was that decision made? It must have been made before they presented it to the grand jury, they wouldn't have even done it, right? Well, Judge, and that is the reason we believe that Judge Kaufman granted the motion on absolute immunity for December 21st, for the December 21st meeting. Again, as I said, the scope of absolute immunity for prosecutors, the Supreme Court has been working on it. In Kalina v. Fletcher, in that case back in 1997, the prosecutor had signed an arrest warrant, I believe, as a witness, but attempted to say, well, you know, this is part of my duties as an advocate, and the court in that case split out, okay, you can't do it as a witness. But here's again why I'm confused. Judge Kaufman's opinion says, although the complaint acknowledges that the prosecutors had already made a decision to indict the plaintiffs by the time Jennifer Smith interviewed April McQueen, referring to the November 12th one, according to Judge Kaufman, you conceded that in the complaint. Your Honor, we conceded that they were, that's what they were saying, but it was not probable cause. It was not probable cause to indict, and you can't, again, the only information they had to indict. But that's a different, okay, You're saying that there's no absolute immunity if there's no probable cause? Yes, Your Honor. But that just fights, that just eliminates, that just eliminates immunity because you need the lack of probable cause for your underlying claim. Well, what case do you have that says that you only apply absolute immunity? Buckley v. Fitzsimmons. I'll get the exact page number. 509 U.S. 259 is the official site, 280. And that's the clearest statement of Justice Scalia just discussing the scope of it and the analysis, he's a concurring opinion of the analysis. It goes through the fact that, look, you know, we do a functional test. And he says, of course, if there's no probable cause to arrest, there's no probable cause, you're not an advocate. And these defendants, appellants, were charged. We're not talking about probable cause to arrest here. We're talking about whether they intimidated a witness in connection with the indictment, correct? Right, Your Honor. Until the indictment is So, in other words, you say that a prosecutor gets absolute immunity if they're preparing for the grand jury proceeding and the grand jury indicts, but they don't get it if they're preparing for the grand jury and the grand jury refuses to indict based on a lack of probable cause. Is that your argument? No, Your Honor. Not if they indict based on intimidation. Because it's looking back at what you've done. It's the investigative process, you know, until there's a case. And there's no case if there's not probable cause. Again, Justice Scalia said it very clearly. While you're investigating, and this is obviously, this is the challenge, is at what line does it become investigation and advocacy? Right. And if prosecutors, if they're in their investigatory mode, if they're in their investigatory mode, they don't get immunity except for what a police officer would get, which is qualified immunity, which our next discussion will be about. And the case, again, that you're recording? It's Buckley v. Fitzsimons, Your Honor. 280. Okay. So we agree that the determining factor is the line between investigatory and prosecutorial. Sure. Okay. And are you disputing the fact, and I think it's unclear to me whether you are disputing the fact that they had, that Ms. Smith had decided before she brought the witness in, that she was going to bring a case on these two issues based upon what she heard before? Judge, that was their official position that they were going to indict. They what? That was their official position that they probably were going to indict. They had, Ms. McQueens was contacted to come and testify saying, look, I'm going to go forward unless I talk to you, and left with the impression that they were still doing an investigation. Well, you admit that if they were, if they just put her in cold turkey in the grand jury and she testified, there'd be absolute immunity for the prosecutor, right? Absolutely, Your Honor. Without the talk, 10 minutes earlier or whatever it was. Well, actually, Your Honor, it was, you know, they didn't indict, well, no, General, the initial talk, there were several, the 12th, the 28th, the indictment didn't come until January. Prior to that, I mean, she actually was so concerned with her treatment, I mean, she contacted the State Police and did an interview with the Kentucky State Police, which is a striking thing for a victim to do. A lot of times witnesses will kind of backpedal and don't want to appear, they don't want to come to court, right? Right, sir. The prosecutor is supposed to say, okay, that's the end of it. Your Honor, if that was the essence of the claim, however, you know, a very, very determined effort was made. I mean, she wasn't, she didn't just call to complain about the prosecutor or go in and do the interview about the prosecutor. It was also about the Nelson County Police Department. You know, and it started out with very, very intense pressure to allege, you know, rape in the circumstances that they were in. And that, you know, that initially, we believe the facts. Again, one of our issues raised, we would deny the opportunity to take discovery. We believe the facts will show that the decision to indict that was kind of bandied around was probably on this issue of the rape that she had basically destroyed. And it was at that point they were analyzing and they said, okay, perhaps we might go forward on other claims. You say that, obviously you've listened to the tape of the interview on November 12th. Right, Your Honor. It doesn't concern the question of whether she was or wasn't raped. It concerns whether she was intimidated by the police officers. It does there, Your Honor. It does there. But there's also interviews from the 21st as well. But this case turns on what happened in the November interview and the, excuse me, the meeting, however we characterize it, in November 12th and then again in December, right? Right, Your Honor. The other thing I wanted to ask you before we let you sit down is you're relying very heavily on Buckley. Just for your benefit, you give us a table of contents of the table of authorities. Buckley's on a different page. But I found Buckley, at least where you've cited it twice, neither for the proposition that you're advancing. Do you have a citation there as to what page in Buckley, Scalia in particular, you want us to look at? It's 280, Your Honor. 280. All right, good. Thank you. Just one question. I'm sorry. Didn't you plead in your complaint, didn't you affirmatively state that they made the decision before interviewing her in November? Yes, Your Honor. But now you're saying they didn't. Your Honor, we say that they publicized that they made the decision to do it, but they didn't have probable cause to do it. And they didn't really make the final decision until they interviewed her.  Until they interviewed her, Your Honor. And what's your support for that? Just the timing of it, Your Honor. What was said to Ms. McQueen to get her to come to the meeting, what was said to her in the meeting, the way she felt like she had been intimidated in the meeting. But when she left, the impression she got that there was not going to be an indictment. And both Ms. McQueen and her attorney filed affidavits in support of that. Their understanding was they thought it was done. They felt like it was an investigation. So we're supposed to be looking at what the complaining witness thought when she left an interview as opposed to what actually occurred during the interview to determine whether there was improper conduct by a prosecutor occurring during an investigative stage so they don't get immunity. Is that it? Your Honor, I'm sorry. There were a couple of flips back and forth. I'm not sure I followed it. When we keep asking you, well, what's the evidence of all of that? And then you point to, well, that's what the complaining witness thought when she left the interview. Or that's what her attorney thought when she left the interview. Well, no, Your Honor. Why aren't we just looking at what happened during the interview? Well, because what we have here, Judge, the simple evidence, the only real evidence we have other than those statements are the defendant saying, we were going to indict this day. Okay? We had made the final decision. We don't believe that. Which you conceded. Well, Judge, we conceded they announced they were going to do it. We think they were still in that investigative process. And because of the nature of the, if you look at the nature of that interview, that is clearly what they were trying to do. Judge, if she doesn't testify on their behalf, they cannot prove, they cannot prove. That's the whole point. They make the decision that they're going to bring an indictment on witness tampering and assault. They call her in and they tell her, I thought they said, and correct me if I'm wrong, that we're going to do it with or without you. You're saying that they. . . If you don't come in, we're going to do it without you, Judge. If you don't come in, we're going to what? If you don't come in and interview us, we'll do it with or without you. If you don't come in. Okay, but to say, it's one thing to say, if you don't come in, we're going to do it without you. It's something else to say, we want to say come in because we're going to do it with or without you. I don't understand the if you don't come in, we're going to. . . What about that statement implies that if she does come in, they're not going to do it? That's what, again, Judge, that's what they felt when they came in there. Part of it because. . . Who felt? That's what, Judge, that's what that particular witness felt and the plaintiff, the appellants, were understanding from the law enforcement that is part of the same team that there wasn't going to be an indictment because she had made it very clear that she did not feel that she was being intimidated. She did not feel that she was being threatened. Right, but she said a lot of things at various times. And so you made the point that without this witness, they didn't have anything. But that's what prosecutors do. They prepare witnesses and the law says that they have immunity even if they strong-arm witnesses. If they're in the investigative stage, Your Honor, and again, when you have the only witness, the only witness saying it did not occur, the only. . . And they're always in the investigative stage, you're saying. Your Honor, Judge, if it's supported by other corroborating things, it's possible. But in this case, the only. . . the alleged victim. . . So if it's a he said, she said situation, then they're always investigating because there's a possibility they may change their mind about prosecuting based on what somebody said. And, Judge, the investigation. . . Is that right? I'm not sure. I'm not sure again. I'm not sure I followed it. I was thinking something else. What I glean from what your argument is, is that when it's a he said, she said situation. So in other words, there isn't any other evidence, corroborating evidence about, in this case, intimidation. It's a question of whether she's going to testify to it or not. Because they've already made the decision to indict, but you say they were still investigating, that means that because they might change their mind and decide not to go ahead because she's not a good witness, therefore it's investigated. No, Your Honor, what I'm saying is if there's no probable cause, if there was no probable cause for them that a crime had been committed, they're in the investigative stage until that determination is made. Now, in this particular case, it will become. . . because under 1983, a probable cause is a jury statement, is a jury decision. And they're investigating up until the time the grand jury then decides to indict or whether they think they have probable cause. Judge, if there was probable cause, these. . . Answer the question, please. Is the probable cause determination that you're pointing us to the fact of the indictment or no true bill, or is it the subjective opinion of the prosecutor at a given point whether they think they've got probable cause? Probably subjective, however, Your Honor, that would be. . . In this kind of context, that would be subject to. . . A jury would have to review that simply because. . . You understand in the whole immunity world, there is no such thing as a subjective test. It's a functional test for absolute immunity. It's an objective test for qualified immunity. Your Honor, the issue here is that if these people were truly intimidating or threatened this witness, then there was probable cause to arrest them, and no one arrested them. As we made clear in this, this was related to a political issue that two weeks before a political ally of the prosecutors had gone public saying this woman had been coerced into sex. That was what the nature of it was. There was no probable cause to indict these individuals. Thank you, Your Honor. May it please the Court, Matt Bretts on behalf of David Smith. I'll take five minutes and leave the rest of the time, although I don't know if I'm going to need my five minutes today. David Smith, a prosecutor, met with a victim one time after she had testified to the grand jury twice and after she testified to the grand jury that she was beat without her consent and she was forced to drink urine without her consent and after she testified to the grand jury that she felt threatened by the police. That's his sole involvement with April McQueen and he is entitled to absolute immunity for his conduct going forward. Judge Kaufman correctly found that. There is no allegation that David Smith was involved in this November meeting because he wasn't. There is no allegation that he is somehow responsible for Jennifer Smith's conduct because he's not. There is no allegation of supervisor liability. There is no allegation that they dismissed their official claims against David Smith. Below, he was only sued in his individual capacity. They don't have a claim against David Smith for anything other than what happened after the grand jury had convened and after he eyeballed a witness, which is what prosecutors are supposed to do. I would posit that prosecutors that don't talk to witnesses might not be compliant with the duties they owe to their office and to the Commonwealth. You have witnesses who change their story. This case is a perfect example of that. And prosecutors are entitled to talk to them about their changing story. Prosecutors are entitled, and I would say obligated, to remind witnesses whose stories change, careful, you might be engaging in perjury, which is what he did on December 21st, as alleged in the complaint. Now, we've heard quite a bit this morning about probable cause. Let's not forget that there is an indictment for assault. April McQueen went to the Sheriff's Department on October 27th and said the assault was non-consensual and I was forced to drink their urine. That's in the record, 11-2. That's what she told the police. That's probable cause. They could have arrested at that time, but they did not. If it was political, I suppose they could have arrested at that time. I would say that they engaged in a fair amount of discretion here. They allowed her to present her case several times to the grand jury. They read a letter from her lawyer into the grand jury.  They could have arrested them for assault at the very beginning. Her story changed the next day when the police brought her to the Sheriff's Department and Mr. Rogers, it's in the record, said, yeah, we could probably be in trouble for intimidating a witness. They could have arrested them. The premise of the argument, as I think I understand it, is that when you're evaluating the functional approach of a prosecutor, you also look to see whether the prosecutor had probable cause at that time. I think that's it. Have you found any authority for that? I have not, Your Honor. And you raise an interesting point. It is unclear to me from the briefs that I read and from the argument that I heard what complaint the appellants have with respect to Judge Kaufman's ruling on absolute immunity, which is the only issue related to David Smith. We heard a lot about what happened in November, but I didn't hear anything about that Judge Kaufman was wrong with respect to her decision as to what happened on December 21st. In fact, their brief doesn't say that her decision was wrong. They just say that they were entitled to some discovery. And if Your Honors will look, this Sixth Circuit has said that in terms of immunity, in cases involving immunity, you can't avoid a ruling on the issue of immunity once it's raised. You have to address it right away. And you address it right away so that you don't force prosecutors like the Smiths to deal with cases like this, and instead you decide it on the merits. David Smith didn't meet on either of these two occasions with McQueen, right? He met with Ms. McQueen on December 21st, as alleged in the complaint. 21st. After she testified twice. But not before. Right. We don't usually do this, but perhaps with the indulgence of the panel we can clear this up. Are you appealing the grant of absolute immunity to David Smith for what he did on December 21st? Judge, only to the extent if the court determines that they're only entitled to qualified immunity unless there's probable cause. I don't have a clue what you just said. So please let me try one more time. Listen to the question. Are you appealing Judge Kaufman's grant of absolute immunity to David Smith for what he did on December 21st? Yes, Your Honor. And where do we find that in the pleadings? Why don't you be thinking about that before I judge you. Okay. All right. You're still up, but your time's up. I'm still up. You're still in the case, apparently, but your time is up. I'm still in the case. My time's up. The only thing I wanted to say, if I could have the Court's indulgence for just a few seconds, we heard a little bit about discovery. The case law from the United States Supreme Court in the Sixth Circuit is clear. In cases of absolute and qualified immunity, you don't get discovery. Here we have a substantial factual record already. Absolutely false. Yet limited discovery in connection with qualified immunity insofar as it goes to the issues attended to qualified immunity. And you have to raise it appropriately. I spent a lot of time on that one. And you have to raise it appropriately. And I will contend that if you look at the Grant v. Hollenbeck case, the 1989 case, when Grant says, when the Sixth Circuit said in Grant, gee, when you say you want to take a factual hearing on absolute and qualified immunity, that's no different than their affidavit they submitted. There's no evidence in the record that the affidavit they submitted has come to an end. All right. Thank you. Good morning. May it please the Court, I'm Lucy Pett. I'm here to present the argument on behalf of Jennifer Smith, and I'm going to focus on the November 12, 2009 incident. The first thing that I will say is that the complaint did allege and the response to the motion to dismiss allege that the decision to indict had been made. At page ID 401 and 402, which is their response to our motion to dismiss, they state, Defendant Jennifer Smith wanted Ms. McQueen to contact her because she was going to present a case to the Madison County Grand Jury with or without Ms. McQueen. That's in the appellant's brief. So that issue was conceded. And below, there was no attempt to create any nuance in that representation like has been done today. So that was conceded. Second, I think probable cause existed as a matter of law when that meeting took place because of the conflicting statements that we had from Ms. McQueen to the Sheriff's Office on October 27th and October 28th. Let's drop back just so we don't get too enmeshed in the facts of this case and lose sight of the bigger picture here. Let's assume for a second that the decision to indict had not yet been made, but the decision to present to the Grand Jury had clearly been made. I want you to just assume that for a second. Would the preparation of a witness in connection with their upcoming Grand Jury testimony be investigative or prosecutorial? It would be acting as an advocate. That's what the Supreme Court has said. Preparation for initiation of judicial proceedings, including preparation for presentation at trial or before a Grand Jury. Now how do we determine whether what was occurring on the 12th was in connection with just simply trying to figure out what happened here, in other words investigative, versus preparing for a witness's Grand Jury testimony? I think that we look at it in terms of the way the appellants have characterized what occurred. And the way the appellants characterized what occurred is that the prosecutor, in this case Ms. Smith, was meeting with Ms. McQueen and her lawyer in an attempt to coerce her, to harass her into testifying based on her first version of what occurred as opposed to her second version of what occurred. That is essentially what they claim. But in other words, they were trying to coerce testimony as opposed to investigative as the way you would characterize it. I accept what they say as the way the court has to view it here. And if you are trying to coerce testimony, you are doing what Buckley said. It's an out-of-court effort to control a witness's Grand Jury testimony. And that is advocacy. And interestingly enough, while Mr. Horne seems to be basing a lot of his case on Buckley, Buckley seems to say you get absolute immunity. We believe that it does. Buckley says the decision to seek an indictment, the decision to present to a Grand Jury, is an advocacy function whether or not probable cause exists. That's what Buckley says. So do you have a reply to the argument he's making that's not in his brief about what Justice Scalia apparently also said in Buckley that I do not have in front of me? The language that he references is in Buckley that before there's probable cause, a prosecutor shouldn't consider themselves to be an advocate. But what is also in Buckley is an explanation of that that says the decision to indict is absolute immunity, an advocacy function, whether or not probable cause exists. And those two things do conflict to some extent. There's an unpublished opinion called Drake v. Howland. It's 463 Federal Appendix 523. It's a 2012 Sixth Circuit case, and it notes that issue, and it talks about the Buckley footnote that makes clear that it's an advocacy function when you make the decision to bring charges to a Grand Jury regardless of whether there's probable cause. So I don't think this idea of is there probable cause or is there not probable cause necessarily the dividing line in the sand as they present it. Regardless of that fact. Was Justice Scalia writing for the majority in what he said? Yes. That language appears in the majority opinion. But I think that probable cause does exist based on these conflicting statements. And it's not just Ms. McQueen who on the first day said it was consensual except for these two very specific acts. A point blank said, no, I was very vocal. I didn't want to do that. And then the statement the next day where she's brought back by the police and says, I want to tell you today that everything was consensual, including those two acts. On top of that, we have Officer Rogers, who gave a statement that day, who admitted that his actions in bringing her back down there to give another statement that could be considered intimidation of a witness. So based on the- Rogers is the guy that's dropped out because he's in prison on a child pornography charge. That's correct, Your Honor. You just can't make this stuff up. That's correct. So by his own words, he admitted that their actions and what they did by bringing her back down there could be viewed as intimidating a witness. I think if you're going to cast this as not an advocacy function, and I think that it is, regardless of whether or not you're coercing a witness to give testimony before a grand jury, that's advocacy. Whether or not you're preparing to present testimony to a grand jury, that's advocacy. If you're going to call this investigatory, I think you have to characterize this as a meeting without probable cause during the investigatory stage of the case in order to manufacture evidence of probable cause. That's really what they're claiming. That's what they have to show for the court to believe this was in an investigatory capacity. And we know that- Your basic argument is that even if probable cause is a factor, there was abundant evidence of probable cause. Whether the grand jury would indict and whether a jury would convict is a different question. Right. That's right. And this cannot be an investigatory function because this is not a manufacture of evidence case. If you look at those cases where you have a prosecutor who doesn't have any evidence who goes out and finds a witness to give false testimony, there are a couple things involved there. It's a true manufacture of evidence. The fact of that manufacturing is withheld. It's a secret from the defendant. And then the defendant is convicted on that. And then sometime later they find out what occurred. Here, nothing had to be created because she was already on record as having given one statement and then a different one. Two, nothing was secret about this. She came to the meeting with an attorney, Mary Sharp, an attorney who she said was hired for her by these Richmond police officers. The Richmond police officers' own attorney drove them to the meeting with Ms. Smith. There's nothing about this that was a secret. In fact, that meeting was played to the jury. There was a lot of discussion about these meetings with the prosecutors, and, in fact, these police officers used it as their defense, their defense that she was lying when she said she didn't want us to beat her and she didn't want us to urinate on her. She was lying because she was intimidated. So that is just not a reasonable argument. That's the only way you get to qualified immunity, is if you believe this was in the investigatory capacity and it was to manufacture evidence of probable cause. Even if you get there, they still lose because there is no Fourth Amendment seizure. There is no Fifth or Fourteenth Amendment deprivation of life, liberty, or property. There was no arrest. There was no incarceration. There was no conviction. If I could not to contradict my co-defendant, but these are felonies. And so under our civil rules, a felony can be charged in circuit court only by return of an indictment. So that was the process to go through for intimidating a witness. That's a felony. You can't just arrest and bring those charges in the circuit court. You have to do that by indictment, which is what was done here. But because there was never an arrest, never an incarceration, and never a conviction, there's no violation of a constitutional right. Liberty deprivation has to be coupled with a lack of due process, and this case lacks that coupling. The Supreme Court was asked to hold what these appellants say. Petitioner asked us to recognize a substantive right to due process under the Fourteenth Amendment to be free from prosecution except upon probable cause. The Supreme Court rejected that. They declined to do that in the Albright case because, as we know, you don't have a constitutional right that only guilty people will be arrested or charged with crimes. And if I may make one final point. Why not? I've completely failed as a timekeeper today. We have also appealed the district court's decision with respect to the attorney's fees. There is a fee-shifting provision in Section 1988. It allows the prevailing defendant to get fees if claims are frivolous, unreasonable, or without foundation. And here, these claims were frivolous and unreasonable and without foundation for a couple of reasons. One, the Supreme Court in 1976, when they first spoke on this issue of absolute immunity, said that the decision to institute criminal proceedings is protected by absolute immunity. Two, probable cause existed as a matter of law, as we've talked about today. And three, there was never a liberty violation because they were never arrested, incarcerated, or acquitted. And if he brings up this idea that they lost their jobs, that was never argued below. It's factually incorrect and legally incorrect. And these folks have real attorney's fees that we estimated to the district court in the mid-'80s, some $85,000. To the most extent, they personally incurred those. And that shouldn't happen. They shouldn't have to defend against a frivolous and unreasonable case. Embler talks about public prosecutors having to do their job with courage, that we want them to exercise their best judgment, and that public trust would suffer if their decisions are constrained by worry about these kinds of cases. To enforce that and to recognize that this was frivolous from the beginning, we would ask the court to reverse that decision, remand the case for an award of attorney's fees. Thank you. Thank you. Mr. Earhardt? Your Honor, at our initial brief, pages 18 through 22, we discussed Mr. Smith's involvement in the December 21st meeting. Your Honor, as counsel, I want to clarify one thing. When I was shaking my head, Scalia was writing a current opinion. He didn't write the formal opinion, but he was writing a concurring opinion, and that's why. And did any other justices join in his concurring opinion? Your Honor, I don't know that. I just want to be clear. He was clarifying what he believed the majority position was saying, but that's the clarification there. Your Honor, Judge Coffman, on regard to the attorney's fees, Judge Coffman found that the claim was not frivolous. I mean, we had extraordinary circumstances, and, Your Honor, I've never been a prosecutor. It was striking that a witness would ever go to the state police. Before the indictment actually came out, Judge went and had an interview with the Kentucky State Police, saying she felt like she was being intimidated by law enforcement and the prosecutors. She testified under oath at her trial that she committed perjury because of the intimidation and coercion from the prosecutorial team at the trial. Clearly, the claims were not frivolous. Judge Albright, Your Honor, Albright, in that particular case, if the court made it, it was an interesting observation that because he was not, Mr. Albright wasn't seized, but that was a Fourth Amendment claim only. As we pointed out pretty clearly in the briefs, that we made a claim under the Fourth, the Fifth, and the Fourteenth Amendment. They just stated we did not raise the claims. Do you have any authority that says under the Fifth and the Fourteenth Amendment it's a constitutional violation to be indicted? To be indicted? No, Your Honor. The constitutional violation was a denial of due process for having the indictment process corrupted by the harassment and by the intimidation of the witness earlier. Is there any authority that says that that's a constitutional violation under the Fifth and the Fourteenth Amendment? Under the Fifth Amendment, Judge, it's a right to trial. The question is, is there a case that says what you just said? That it is a violation of the Fifth Amendment to an unfair trial, Judge? Yes. Yes, there is. No, not an unfair trial. But it's the judges' denial of property rights and their loss of their employment. That's the damage. Judge, I guess the question is, is it for the qualified immunity? We're kind of just spinning around like a top here. All right, Judge. You say the case that was cited by your opposing counsel dealt with the Fourth Amendment, and you are bringing this case also under the Fifth and the Fourteenth Amendment. Correct, Your Honor. And do you have cases that say that what happened here was a violation of the Fifth and the Fourteenth Amendment? Yes, Your Honor. And what case should we look at for that? Well, Judge, they're cited pretty extensively in the brief. Albright actually discusses that. We cite it pretty extensively under the Fifth Amendment. Albright discusses it. So you're claiming that it was a constitutional violation under these other amendments and that it was clearly established because of Albright and the other cases that you cite. Yes, Your Honor. Okay, got it. Anything else? I appreciate your time. Thank you, Your Honor. All right, thank you. The case will be submitted. That completes our argued calendar this morning. Please adjourn the court.